IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


LEONIA ALLEN )
 )
 Plaintiff, )
 )
 v. )  1:09CV17
 )
FEDERAL EXPRESS CORPORATION )
 )
 Defendant. )


**MEMORANDUM OPINION AND ORDER**


 Presently before the court is Defendant's Motion for Summary Judgment (Doc. 37). Having reviewed the pleadings, the discovery materials, and the parties' arguments, the court will grant Defendant's motion.

**I. BACKGROUND**

 Plaintiff Leonia Allen ("Plaintiff") filed this action on September 25, 2008, in North Carolina Superior Court, Durham County. (Compl. (Doc. 2) 1.) Plaintiff asserted the following claims: race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); wrongful termination; negligent infliction of emotional distress; and violation of the Family and Medical Leave Act. (Id. ¶¶ 64-102.)

 On January 6, 2009, Defendant Federal Express Corporation ("Defendant" or "FedEx") filed a Notice of Removal to this court (Doc. 1). On January 8, 2009, Defendant filed a Motion to

Dismiss four of Plaintiff's five claims for relief pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 9). On September 30, 2009, this court granted Defendant's motion to dismiss as to all claims except Plaintiff's Title VII claim of retaliation. Mem. Op. and Order, <u>Allen v. Fed. Express Corp.</u>, No. 1:09CV17, at 12 (M.D.N.C. Sept. 30, 2009) (Doc. 20). In her remaining claim, Plaintiff alleges that she "was demoted, denied job opportunities and eventually terminated from her employment with Defendant" because she had engaged in activities that are protected under Title VII. (Compl. (Doc. 2) ¶¶ 67-68.) She alleges further that "Defendant's reasons for her termination were pre-textual and illegitimate and not based on any findings of fact or investigation by Defendant's agents or employees." (<u>Id.</u> ¶ 69.)

The court finds the following undisputed facts, drawing all justifiable inferences in favor of Plaintiff. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) (citation omitted). Plaintiff is an African-American female. (Compl. (Doc. 2) ¶ 65; Answer (Doc. 25) ¶ 66.) Defendant is a corporation registered to do business in North Carolina. (Answer (Doc. 25) ¶ 5.) On or about August 3, 1997, Defendant hired Plaintiff for the position of part-time courier. (<u>Id.</u> ¶ 6.) Plaintiff worked as a FedEx courier until on or about April 2, 2000, when Plaintiff began working as a dispatcher at Defendant's RDUA station in Durham, North Carolina. (<u>Id.</u> ¶¶ 7-8; Allen Dep. (Doc. 39-1) 31-32.)

While working for FedEx, Plaintiff consistently received excellent performance reviews, including several evaluations on which she received a score of 6.9 out of a possible 7. (Zollicoffer Dep. (Doc. 40-5) 22-24;[1] id. Exs. 1-11 (Doc. 40-6) at 3-10.)

During her employment as a FedEx dispatcher, Plaintiff worked with another dispatcher named John Carr ("Mr. Carr"). (Answer (Doc. 25) ¶ 17; Allen Dep. (Doc. 39-1) 124.) Plaintiff alleges that, from the first day she and Mr. Carr worked together, Mr. Carr acted in an intimidating manner toward her and "would sabotage [Plaintiff's] work as a dispatcher." (Compl. (Doc. 2) ¶¶ 17-20; Allen Dep. (Doc. 39-1) 124-25.) Plaintiff also alleges that Mr. Carr's actions as a dispatcher for FedEx "included but were not limited to falsifying time cards, instant messaging personal friends on company time, not answering the phone, not completing reports, and not completing his closed lists for holidays." (Compl. (Doc. 2) ¶ 28.)

In or about April 2004, Plaintiff submitted a complaint against Mr. Carr through Defendant's "Open Door process." (Allen Dep. Exs. 10-21 (Doc. 39-3) at 7.) Plaintiff's Open Door complaint requested that Mr. Carr's schedule be changed,

_____

[1] The citations herein to the deposition of Anthony Zollicoffer (Doc. 40-5) refer to the page numbers that are centered at the bottom of the transcript pages. These same page numbers also appear at the bottom right-hand corner in Document 40-5.

asserting "that the A.M. dispatchers are suffering due to a lack of coverage at mid-day due to the late arrival of [Mr. Carr], who is allowed to arrive one hour late and take ½ hour meal break." (Id.) There is no evidence that Plaintiff's Open Door complaint contained any allegations of discrimination based on race, color, religion, sex, or national origin. (See id.)

On July 1, 2005, Plaintiff sent an e-mail to Steven Lowder ("Mr. Lowder"), a senior manager for FedEx. (Id. at 8-9.) In the e-mail, Plaintiff accused Mr. Carr of, inter alia, falsifying his timecard and overriding other dispatchers' decisions without giving adequate notice. (Id.) Plaintiff's e-mail did not contain any allegations of discrimination based on race, color, religion, sex, or national origin. (Id.)

Between July 22, 2005, and April 6, 2006, Plaintiff sent FedEx management seven additional e-mails in which she complained about numerous aspects of her working conditions, including but not limited to Mr. Carr. (Id. at 10-22.) None of these e-mails contained any allegations of discrimination based on race, color, religion, sex, or national origin. (Id.)

At some point amid Plaintiff's aforementioned complaints against Mr. Carr, there was discussion between Plaintiff and FedEx management about possibly separating Plaintiff and Mr. Carr in order to alleviate their ongoing conflict. (Allen Dep. (Doc. 39-1) 83-84; Zollicoffer Dep. (Doc. 40-5) 53-54.) However, since

in or about February 2006, before any discussion of separating
Plaintiff and Mr. Carr, FedEx management had also been
considering the possibility of restructuring the dispatch group
of which Plaintiff was a member in order to resolve issues of
excessive overtime and insufficient coverage.  (Zollicoffer Dep.
(Doc. 40-5) 56-58; see also Allen Dep. Exs. 10-21 (Doc. 39-3) at
23.)

Sometime shortly before April 24, 2006, Anthony Zollicoffer
("Mr. Zollicoffer"), Plaintiff's direct manager, distributed a
memorandum notifying Plaintiff's dispatch group of an upcoming
restructuring, described as a "Position Rebid."  (Allen Dep. Exs.
10-21 (Doc. 39-3) at 23; Zollicoffer Dep. (Doc. 40-5) 67-68.)
The memorandum stated that "it has become necessary to change
some shifts and positions in our room. . . . to help ensure
adequate coverage . . . . [and] to minimize the need to schedule
overtime."  (Allen Dep. Exs. 10-21 (Doc. 39-3) at 23.)  The
memorandum stated further that a "bid sheet" would be posted on
April 24, 2006, and that the position changes were projected to
take effect on May 30, 2006.  (Id.)

Pursuant to the position rebid, the members of Plaintiff's
dispatch group had to bid on, or sign up for, the various
assignments that comprised the dispatch group.  Bidding was done
in order of the dispatchers' seniority with FedEx.  (Allen Dep.
(Doc. 39-1) 85-86; Zollicoffer Dep. (Doc. 40-5) 58-59.)  Among

the members of her dispatch group, Plaintiff was "[n]ear the bottom" in terms of seniority with FedEx. (Zollicoffer Dep. (Doc. 40-5) 61-62; <u>see also</u> Allen Dep. (Doc. 39-1) 86.) Due to Plaintiff's lack of seniority over her fellow dispatchers, the rebid resulted in Plaintiff being reassigned from her "regular" dispatch position to a "swing" dispatch position. (Zollicoffer Dep. (Doc. 40-5) 42, 58.)

Plaintiff's regular dispatch position entailed a set schedule of 10:00 a.m. to 7:00 p.m., Monday through Friday. (Allen Dep. (Doc. 39-1) 88-89; <u>see</u> Zollicoffer Dep. (Doc. 40-5) 17.) Her new job as a swing dispatcher required working "on an as needed basis," covering for other dispatchers while they were on vacation or sick leave. (Zollicoffer Dep. (Doc. 40-5) 16-17.) In general, Plaintiff's swing dispatch position required her to work Tuesday through Saturday, but that schedule was "subject to change for business needs." (Allen Dep. Exs. 10-21 (Doc. 39-3) at 23; <u>see also</u> Allen Dep. (Doc. 39-1) 88.) Plaintiff opposed the change from a Monday-through-Friday shift to a Tuesday-through-Saturday shift. (Allen Dep. (Doc. 39-1) 96-98.) Her reassignment resulted in a decrease in the number of hours she was able to work and, consequently, a reduction in pay. (<u>Id.</u> at 91-92, 98.) Plaintiff considered her reassignment to be a demotion. (<u>Id.</u> at 98; Zollicoffer Dep. (Doc. 40-5) 60.)

On April 27, 2006, Plaintiff submitted a complaint through FedEx's Guaranteed Fair Treatment Procedure ("GFTP") in which she alleged "[u]nfair treatment." (Allen Dep. Exs. 10-21 (Doc. 39-3) at 39-44.) The GFTP complaint mentioned past expressions of concern about discrimination, but did not specify that the alleged discrimination was based on race, color, religion, sex, or national origin. (<u>Id.</u>) During her deposition in this case, Plaintiff was asked whether she had ever complained to FedEx about race or gender discrimination prior to the GFTP complaint. Plaintiff responded that she had not complained of any "racist remarks" or "gender comments." (Allen Dep. (Doc. 39-1) 127.)

On May 17, 2006, Plaintiff filed a complaint through FedEx's internal Equal Employment Opportunity ("EEO") process. (<u>Id.</u> Exs. 22-30 (Doc. 39-4) at 1-9.) Plaintiff listed "Race," "Disability Status," and "Color" as the bases for her complaint. (<u>Id.</u> at 1.) During her deposition in this case, Plaintiff was asked if she could recall submitting any written or verbal complaints of discrimination prior to her internal EEO complaint. Plaintiff responded, "Not at the moment." (Allen Dep. (Doc. 39-1) 137.)

Based on the foregoing, this court finds that Plaintiff has failed to allege or present evidence that she ever complained to Defendant of any discrimination based on race, color, religion, sex, or national origin before FedEx management made the decision in or about April 2006 to restructure Plaintiff's dispatch group.

According to the forecast of evidence before the court,
Plaintiff's earliest complaint of discrimination based on race,
color, religion, sex, or national origin was her internal EEO
complaint of May 17, 2006.

Plaintiff's internal EEO complaint asserted that her
reassignment to a swing dispatch position was an act of
discrimination based on her disability status. (<u>Id.</u> Exs. 22-30
(Doc. 39-4) at 1-4.)  The EEO complaint also alleged that Mr.
Carr subjected Plaintiff and other FedEx employees to workplace
harassment because they were African-American. (<u>Id.</u> at 4-7.)
The complaint did not assert that Plaintiff was reassigned in
retaliation for any previous complaints she had made. (<u>Id.</u> at 1-
9.)

On June 2, 2006, Plaintiff sent an e-mail to FedEx
management alleging that on May 31, 2006, Mr. Carr had subjected
her to "physical harassment," stating, "To be exact he poked me
in the shoulder." (<u>Id.</u> at 12.)  On June 6, 2006, Plaintiff
submitted a more formal workplace violence report regarding the
incident. (<u>Id.</u> at 13-15.)  FedEx conducted an investigation into
Plaintiff's report of workplace violence, during which Mr. Carr
was placed on investigative suspension. (Zollicoffer Dep. (Doc.
40-5) 84.)  The investigation concluded that Mr. Carr did touch
Plaintiff, but that he did not do so aggressively. (Wall Dep.

(Doc. 40-3) 9.[2])  Mr. Carr participated in "documented
counseling" due to the incident.  (Zollicoffer Dep. (Doc. 40-5)
84-85.)

On July 19, 2006, Plaintiff filed a formal charge of
discrimination against Defendant with the United States Equal
Employment Opportunity Commission ("EEOC").  (Allen Dep. Exs. 22-
30 (Doc. 39-4) at 32-33.)  Plaintiff's charge asserted that Mr.
Carr subjected Plaintiff to workplace harassment and
discrimination based on her race.  (Id. at 32.)  The charge also
alleged that Plaintiff's reassignment to a swing dispatch
position was an act of discrimination based on her disability
status.  (Id. at 33.)  The charge did not assert that Plaintiff
was reassigned in retaliation for any previous complaints she had
made.  (Id. at 32-33.)

Between June 7, 2006, and August 19, 2006, FedEx management
received e-mails from three of Plaintiff's coworkers addressing
their observations and concerns about the conflict between
Plaintiff and Mr. Carr.  (Lowder Decl. (Doc. 41-2) Exs. 1-3.)
All three e-mails indicated that Plaintiff's workplace demeanor
was irritable and unpredictable, resulting in a hostile and
uncomfortable work environment.  (Id.)  One of the coworkers,

---

[2] The citations herein to the deposition of Kevin Wall (Doc.
40-3) refer to the page numbers that are centered at the bottom
of the transcript pages.  These same page numbers also appear at
the bottom right-hand corner in Document 40-3.

Peggy Jones ("Ms. Jones"), expressed concern for her personal safety and described Plaintiff as "unstable." (Id. Ex. 2.)

In addition to the e-mails about Plaintiff's conflict with Mr. Carr, FedEx management received reports of confrontations between Plaintiff and her other FedEx coworkers. In February 2006, Plaintiff was accused of harassing and yelling at Jermaine Shepard ("Mr. Shepard"), a FedEx courier. (Allen Dep. Exs. 10-21 (Doc. 39-3) at 15; Zollicoffer Dep. (Doc. 40-5) 128-29.) In late June 2006, Plaintiff had a verbal confrontation with Bron Morris ("Mr. Morris"), another FedEx courier. (Allen Dep. (Doc. 39-1) 176-80; id. Exs. 22-30 (Doc. 39-4) at 16-23; Zollicoffer Dep. (Doc. 40-5) 98-102, 128.) Sometime in the spring or summer of 2006, Mike St. Martin ("Mr. St. Martin"), the managing director of the dispatch organization, (Lowder Dep. (Doc. 40-1) 26), told Mr. Lowder about a telephone conversation he had with Plaintiff, (Lowder Decl. (Doc. 41-2) ¶ 6). Mr. Lowder states that, according to Mr. St. Martin, Plaintiff telephoned Mr. St. Martin, became angry during their conversation, and told him she was "'putting him on her list.'" (Id.) Mr. St. Martin apparently interpreted this as a threat by Plaintiff. (Id.) Plaintiff contends that there is a "complete lack of documentation" of these alleged incidents, (Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. (Doc. 45) 8), but the record contains documentary evidence of Plaintiff's confrontations with both Mr. Shepard and Mr. Morris,

(Allen Dep. Exs. 10-21 (Doc. 39-3) at 15; id. Exs. 22-30 (Doc. 39-4) at 16-23). Moreover, it is undisputed that information about all three incidents was part of Plaintiff's work history at FedEx.

On March 26, 2007, Ms. Jones submitted a workplace violence report about an incident involving Plaintiff and Connie Wojcik ("Ms. Wojcik"), one of the other FedEx employees who had e-mailed management about Plaintiff. In the statement Ms. Jones gave in conjunction with her report, she wrote:

> On Friday, 3/23/07, at approximately 17:45 pm, I was walking to the printer to retrieve something. [Plaintiff] was sitting in her chair facing me, with her index fingers together, pointed out like a gun. She said, "I swear to God, if I had a gun." I assumed she was talking about Connie, since a few minutes earlier, she had called me on the phone to complain about Connie. As I was at the printer, she turned around in her chair and said, "No joke, I am going to get my permit this weekend. You better wear your padded vest, and that's a warning."
> I called my manager, Anthony Zollicoffer, on his cell phone at approximately 9:20 that night to report her comments.

(Jones Decl. (Doc. 41-1) Ex. 2.) There is no evidence that Ms. Jones had any improper motive toward Plaintiff when she submitted her workplace violence report. According to Plaintiff, before Ms. Jones submitted the report, Plaintiff and Ms. Jones "got along" and had never "had any issues or problems." (Allen Dep. (Doc. 39-1) 240-41, 244.) Plaintiff was apparently not aware of Ms. Jones' prior e-mail complaint about Plaintiff and about the

dispute between Plaintiff and Mr. Carr. (<u>See</u> Lowder Decl. (Doc. 41-2) Ex. 2.)

FedEx conducted an investigation into Ms. Jones' report of workplace violence, during which Plaintiff was placed on investigative suspension. (Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. 8 (Doc. 45-8).) Kevin Wall ("Mr. Wall"), an investigator for FedEx, interviewed Ms. Jones, Ms. Wojcik, FedEx employee Mary Linder, and Plaintiff about the incident. (Wall Decl. (Doc. 41-3) ¶ 5.) Plaintiff denies that she made any threats or any sort of reference to a gun on March 23, 2007. (Compl. (Doc. 2) ¶ 59; Allen Dep. (Doc. 39-1) 245-46; Wall Dep. (Doc. 40-3) 18.) In his deposition for this case, Mr. Wall testified that, during her investigative interview, Plaintiff told him that "she pointed like a gun but she did it to her [own] head." (Wall Dep. (Doc. 40-3) 17; <u>see also</u> Wall Decl. (Doc. 41-3) Ex. 4.) Plaintiff denies having said this to Mr. Wall and having put her hands in the shape of a gun at any point on the day in question. (Allen Dep. (Doc. 39-1) 245.)

For purposes of this opinion, this court does not resolve the disputed evidence as to what actually occurred between Plaintiff and Ms. Jones on March 23, 2007, or as to what Plaintiff actually told Mr. Wall. It is undisputed that Ms. Jones submitted a workplace violence complaint against Plaintiff based on Plaintiff's alleged actions of March 23, 2007. (Compl.

(Doc. 2) ¶ 60; Answer (Doc. 25) ¶ 61.)  It is also undisputed
that Defendant conducted an investigation and determined, based
on Ms. Jones' statements, that Plaintiff was in violation of
FedEx's acceptable workplace conduct policy on March 23, 2007.
(Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. 9 (Doc. 45-9).)
Although Plaintiff disputes the accuracy of Ms. Jones'
statements, Plaintiff has presented no evidence suggesting that
FedEx's reliance on Ms. Jones' account was unreasonable.  Nor
does Plaintiff dispute that the conduct that Ms. Jones attributed
to Plaintiff would constitute a policy violation.

By letter dated April 3, 2007, Defendant notified Plaintiff
that her employment was terminated, "effective immediately."
(Id.)  According to the letter, Plaintiff was fired because she
was determined to have been in violation of FedEx's acceptable
workplace conduct policy.  (Id.)  The letter stated further that,
in deciding to terminate Plaintiff's employment, FedEx considered
Plaintiff's investigative interview with Mr. Wall, her tenure
with FedEx, her awareness of company policy on workplace threats,
and her "history of confrontations with other employees."  (Id.)
Mr. Zollicoffer made the ultimate decision to fire Plaintiff.
(Id.)  In making that decision, Mr. Zollicoffer consulted with
Mr. Lowder, Mr. St. Martin, and FedEx's Human Resources and legal
departments.  (Lowder Dep. (Doc. 40-1) 42; Zollicoffer Dep. (Doc.
40-5) 121-26.)

13

On May 7, 2007, Plaintiff filed a second formal charge of discrimination against Defendant with EEOC.  (Allen Dep. Exs. 31-37 (Doc. 39-5) at 26.)  Plaintiff's second charge asserted that she had been fired in retaliation for filing her previous EEOC charge of July 19, 2006.  (<u>Id.</u>)  The second charge did not allege that Plaintiff's earlier reassignment to the swing dispatch position was done in retaliation for any previous complaints she had made.  (<u>Id.</u>)

## II.  LEGAL STANDARD

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56.  The moving party bears the burden of initially demonstrating the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  If the moving party has met that burden, then the nonmoving party must persuade the court that a genuine issue remains for trial by "go[ing] beyond the pleadings" and introducing evidence that establishes "specific facts showing that there is a genuine issue for trial."  <u>Id.</u> at 324 (internal quotation marks and citation omitted).

In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must determine whether

there is a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249.

The court must view the facts in the light most favorable to the

nonmovant, drawing all justifiable inferences in that party's

favor.  <u>Id.</u> at 255 (citation omitted).  However, a mere factual

dispute is insufficient to prevent summary judgment; the fact in

question must be material, and the dispute must be genuine.  Fed.

R. Civ. P. 56; <u>Anderson</u>, 477 U.S. at 247-48.  Material facts are

those facts necessary to establish the elements of a party's

cause of action.  <u>Anderson</u>, 477 U.S. at 248.  A dispute is only

"genuine" if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  <u>Id.</u>

## III. ANALYSIS

Having examined the pleadings, affidavits, and other proper

discovery materials, this court concludes that there are no

genuine issues of material fact for trial in this case.  The

court recognizes that the parties do disagree as to some of the

background facts.  For instance, Plaintiff asserts that she never

made any kind of reference to a gun on March 23, 2007, (Allen

Dep. (Doc. 39-1) 245-46), whereas Defendant apparently believed

that Plaintiff made workplace threats of some sort, (Pl.'s Mem.

Law Opp'n Def.'s Mot. Summ. J. Ex. 9 (Doc. 45-9)).  However,

regardless of exactly what happened on March 23, 2007, it is

unchallenged that the gestures and statements Ms. Jones

attributed to Plaintiff, if true, could reasonably be interpreted

as workplace threats that violated FedEx's acceptable workplace conduct policy. Further, Plaintiff offers no evidence to suggest that Defendant's reliance on Ms. Jones' statements was unreasonable. Likewise, there may be some disagreement as to the precise facts and circumstances of Plaintiff's earlier confrontations with her coworkers. However, while Plaintiff criticizes Defendant's lack of corroborating evidence as to what truly happened during those confrontations, Plaintiff does not deny that the confrontations took place or that they were reported to FedEx management as the record shows.

Likewise, Plaintiff does not dispute that Defendant's stated reasons for terminating her employment were those specified in the termination letter: the events of March 23, 2007; the contents of the statement Plaintiff gave to Mr. Wall; her tenure with FedEx; her awareness of FedEx policy on workplace threats; and her history of confrontations with other employees. (See id.) Instead, Plaintiff argues that FedEx's stated reasons were pretexts for retaliation. Although Plaintiff and Defendant propound different conclusions that might be drawn from the evidence bearing upon the issue of whether FedEx's motives were retaliatory, the relevant evidence itself is uncontested. Thus, the only genuine issues of fact in this case pertain to facts that are nonmaterial, and whether summary judgment is appropriate therefore depends on whether the movant is entitled to judgment

as a matter of law.  Fed. R. Civ. P. 56; <u>Anderson</u>, 477 U.S. at
247-48.

Title VII forbids employment discrimination "against any
individual . . . because of such individual's race, color,
religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)
(2006).  Further, Title VII's antiretaliation provision prohibits
an employer from discriminating against an employee because the
employee "has opposed any practice made an unlawful employment
practice by [Title VII], or because [the employee] has made a
charge, testified, assisted, or participated in any manner in an
investigation, proceeding, or hearing under [Title VII]."  <u>Id.</u> §
2000e-3(a) (2006).[3]

To state a prima facie claim of Title VII retaliation,
Plaintiff must show that (1) she engaged in activity that is
protected under Title VII, (2) Defendant took action against her
that would be materially adverse to a reasonable employee, and
(3) there is a causal connection between the protected activity
and the asserted adverse action.  <u>Lettieri v. Equant Inc.</u>, 478
F.3d 640, 650 & n.2 (4th Cir. 2007) (citing <u>von Gunten v.
Maryland</u>, 243 F.3d 858, 863 (4th Cir. 2001), <u>abrogated by
Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 67-68
(2006)).

---

[3] Because Plaintiff does not clarify which of these two
prongs she is proceeding under, this court will consider both.

In the absence of direct evidence of retaliation, Title VII claims of retaliation are evaluated under the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-05 (1973).  <u>See</u> <u>Lettieri</u>, 478 F.3d at 649-50 (citing <u>Thompson v. Potomac Electric Power Co.</u>, 312 F.3d 645, 650 (4th Cir. 2002)).  The first step of that framework requires the plaintiff to establish a prima facie case.  <u>Id.</u> at 646.  If the plaintiff does so successfully, the burden shifts to the employer at the second step to articulate a "legitimate nonretaliatory reason for its actions."  <u>Holland v. Washington Homes, Inc.</u>, 487 F.3d 208, 218 (4th Cir. 2007) (internal quotation marks and citation omitted).  At the third step, the burden shifts back to the plaintiff to prove that the proffered reason is only a pretext for retaliation.  <u>Ross v. Commc'ns Satellite Corp.</u>, 759 F.2d 355, 365 (4th Cir. 1985) (citation omitted), <u>abrogated on other grounds by</u> <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989).  Thus, the next step of this court's analysis is to determine whether Plaintiff has established a prima facie case of retaliation.

## A.    Plaintiff's Reassignment/Demotion[4]

Plaintiff asserts that her reassignment to the position of swing dispatcher on or about May 30, 2006, constituted a demotion and was undertaken because Plaintiff had engaged in activity that is protected under Title VII.  (Compl. (Doc. 2) ¶¶ 67-68.)  This court concludes that Plaintiff has failed to establish the causation element of a prima facie case of retaliatory demotion.

---

[4] To the extent Defendant previously sought dismissal of Plaintiff's claim of retaliatory demotion (as opposed to retaliatory termination), see Mem. Op. and Order, Allen v. Fed. Express Corp., at 4 n.1 (Doc. 20), it is doubtful that the claim survived Defendant's Motion to Dismiss (Doc. 9).  Neither of Plaintiff's two formal EEOC charges alleged that Plaintiff was reassigned to a swing dispatch position in retaliation for engaging in protected activity.  Also, Plaintiff has not argued that her retaliatory demotion claim is "reasonably related to the original complaint" or that it was "developed by reasonable investigation of the original complaint."  See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) (citations omitted).  Thus, Plaintiff's claim of retaliatory demotion is subject to dismissal for failure to exhaust administrative remedies.  See Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005) ("Before a Title VII plaintiff can bring a formal suit, he must file an administrative charge with the Equal Employment Opportunity Commission (EEOC).  This charge frames the scope of future litigation.").
   Nevertheless, there is reason for this court to analyze the merits of Plaintiff's retaliatory demotion claim.  Although Plaintiff is barred from litigating a legal claim of retaliatory demotion per se, evidence that she was, in fact, demoted in retaliation for engaging in protected activity could be considered for the purpose of establishing that Plaintiff was ultimately discharged for unlawful retaliatory reasons.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). For the reasons set forth hereinafter, this court finds that the retaliatory demotion claim fails on the merits and therefore is not probative of any unlawful retaliatory termination.

There is evidence that Plaintiff complained to FedEx about
her working conditions and her coworkers at least as early as
April 2004.  However, in pertinent part, Title VII's
antiretaliation provision only protects an employee's opposition
to, or charges of, discrimination based on "race, color,
religion, sex, or national origin."  42 U.S.C. §§ 2000e-2(a), -
3(a).  There is no evidence that Plaintiff complained that FedEx
was discriminating against her based on her race, color,
religion, sex, or national origin until she filed her internal
EEO complaint on May 17, 2006, when Plaintiff alleged that Mr.
Carr subjected Plaintiff and other FedEx employees to workplace
harassment because they were African-American.  (Allen Dep. Exs.
22-30 (Doc. 39-4) at 4-7.)

Plaintiff's EEO complaint of May 17, 2006, was obviously
filed before May 30, 2006, the approximate effective date of
Plaintiff's reassignment to a swing dispatch position.  However,
it was sometime in April 2006 that Mr. Zollicoffer notified
Plaintiff's dispatch group of an upcoming restructuring, and the
bid sheet was posted on or about April 24, 2006.  Indeed, one of
Plaintiff's reasons for filing her EEO complaint was to protest
the reorganization of her dispatch group.  (Id. at 1-4.)  In
short, FedEx made the decision to reorganize the dispatch group
well before Plaintiff filed her EEO complaint alleging harassment
based on race.

The third element of a prima facie case of Title VII retaliation requires a causal connection between the protected activity and the asserted adverse action. Lettieri, 478 F.3d at 650 (citation omitted). "Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) (citations omitted); see also Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001) (per curiam) ("Employers need not suspend previously planned [employment actions] upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."). Because there is no evidence that Plaintiff engaged in protected activity before Defendant decided to reorganize the dispatch group and announced the reorganization, let alone any evidence that Defendant knew of protected activity by Plaintiff when it made its decision, Plaintiff cannot establish a causal connection between protected activity on her part and Defendant's decision to reorganize. This court therefore concludes that Plaintiff has failed to establish a prima facie case of retaliation with respect to her reassignment, and this court will grant

Defendant's motion for summary judgment with respect to
Plaintiff's claim of retaliatory demotion.[5]  Because of the lack
of causation, this court also finds that the reorganization and
resulting demotion have no probative value with respect to
Plaintiff's claim of retaliatory termination.

###    B.    Termination of Plaintiff's Employment

Plaintiff asserts that FedEx terminated her employment on
April 3, 2007, because Plaintiff had engaged in activity that is
protected under Title VII.  (Compl. (Doc. 2) ¶¶ 67-68.)  For
purposes of its motion for summary judgment, Defendant has
conceded that Plaintiff's internal EEO complaint of May 17, 2006,
and her formal EEOC charge of July 19, 2006, qualify as protected
activity under Title VII.  (Mem. Law Supp. Def.'s Mot. Summ. J.
(Doc. 38) 13.)  It is also undisputed in this case that
termination of employment would be materially adverse to a
reasonable employee.  See generally Burlington N. & Santa Fe Ry.
Co. v. White, 548 U.S. 53, 68 (2006) (stating that a challenged
employment action is materially adverse if it "might have
dissuaded a reasonable worker from making or supporting a charge
of discrimination" (internal quotation marks and citations

_____

[5] Summary judgment is also appropriate on this issue because
Plaintiff's Memorandum of Law in Opposition to Defendant's Motion
for Summary Judgment (Doc. 45) contains no argument in response
to Defendant's motion for summary judgment as to the retaliatory
demotion claim.  Brand v. N.C. Dep't of Crime Control & Pub.
Safety, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004) (citations
omitted).

omitted)); <u>Dowe</u>, 145 F.3d at 656-57 (citation omitted)
(recognizing that discharge is an adverse employment action).
Thus, the first two elements of a prima facie claim of Title VII
retaliation are satisfied, <u>see</u> <u>Lettieri</u>, 478 F.3d at 650 & n.2
(citations omitted), and this court must determine whether
Plaintiff has produced "evidence from which a reasonable
factfinder could conclude that a causal connection exists between
the protected activity and the adverse action," <u>Dowe</u>, 145 F.3d at
656-57 (citing <u>Anderson</u>, 477 U.S. at 248). This court concludes
that Plaintiff has failed to do so and will therefore grant
Defendant's motion for summary judgment with respect to
Plaintiff's claim of retaliatory termination.

Evidence that adverse employment action occurred shortly
after the employer became aware of the employee's protected
activity has been held sufficient to establish a prima facie case
as to the causation element of a Title VII retaliation claim.
<u>Id.</u> at 657 (citing <u>Williams v. Cerberonics, Inc.</u>, 871 F.2d 452,
457 (4th Cir. 1989)). Conversely, "[a] lengthy time lapse
between the employer becoming aware of the protected activity and
the alleged adverse employment action . . . negates any inference
that a causal connection exists between the two." <u>Id.</u> (citations
omitted). Plaintiff filed her internal EEO complaint on May 17,
2006, and her first formal EEOC charge on July 19, 2006, and
there is no allegation that FedEx was not immediately aware of

either complaint. FedEx terminated Plaintiff's employment on April 3, 2007, more than ten months after Plaintiff filed the internal EEO complaint and more than eight months after she filed her first EEOC charge.[6] This court concludes that Plaintiff's employment was terminated too long after FedEx became aware of her protected activities to establish prima facie causation. See Clark Cnty. Sch. Dist., 532 U.S. at 273-74 ("Action taken . . . 20 months later suggests, by itself, no causality at all.") (citing Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (holding a three-month period insufficient to establish causation); Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (holding a four-month period insufficient)); Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001) (holding, with respect to a claim under the Whistleblower Protection Act, that "[a] six month lag is sufficient to negate any inference of causation" (citations omitted)); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) ("A thirteen month interval between the charge and termination is too long to establish causation absent other evidence of retaliation." (citations omitted)).

When the protected activity and the adverse employment action are too temporally remote to establish a prima facie case of causation, "evidence of recurring retaliatory animus during

---

[6] In contrast, Plaintiff was fired less than two weeks after the crucial intervening event of Ms. Jones' March 26, 2007 workplace violence report.

24

the intervening period can be sufficient to satisfy the element of causation." Lettieri, 478 F.3d at 650 (citations omitted). In Lettieri, the employer stripped the plaintiff of "significant job responsibilities" beginning the month after the plaintiff engaged in protected activity. Id. at 650-51. This enabled the employer to assert that the plaintiff "was not needed and should be terminated." Id. at 651. Within approximately three months of the protected activity, the employer considered firing the plaintiff. Id. Although the plaintiff was fired "because her position was supposedly redundant, [the plaintiff's supervisor] immediately sought approval to hire a replacement." Id. The Fourth Circuit deemed these intervening events, "which occurred regularly" after the plaintiff's protected activity, sufficient to establish a prima facie case of causation. Id. (citation omitted).

Plaintiff asserts that, like the plaintiff in Lettieri, she "was subjected to a pattern of antagonism" after she engaged in protected activity. (Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. (Doc. 45) 8.) This court disagrees and finds that there is no evidence that FedEx, acting by and through Mr. Zollicoffer or any other member of the group that participated in the process of deciding to fire Plaintiff, harbored any animosity toward Plaintiff as a result of any protected activity. Plaintiff states, "After each reported incident of harassment, Defendant

failed to correct the situation, thereby allowing Carr's harassing behavior to continue unabated." (<u>Id.</u>) Even assuming that Mr. Carr's behavior toward Plaintiff constituted a pattern of antagonism, FedEx's mere maintenance of the status quo in the face of Plaintiff's protected activity would not necessarily be evidence of retaliatory animus because Plaintiff's working conditions would not have become any worse as a result of her complaints. In any case, to the extent Plaintiff argues that Defendant retaliated by allowing Mr. Carr to continue harassing Plaintiff, or that Mr. Carr's alleged harassment escalated in the wake of her protected activity, this court finds that Plaintiff's evidence does not rise to the level of the intervening events that established prima facie causation in <u>Lettieri</u>. Plaintiff was reassigned to a swing dispatch position before she engaged in any protected activity, and there is no evidence that FedEx stripped Plaintiff of any job responsibilities during the period between her first protected activity on May 17, 2006, and the termination of her employment on April 3, 2007. Further, Plaintiff has not presented evidence that FedEx considered firing her before Ms. Jones submitted her workplace violence report on March 26, 2007, which was more than ten months after Plaintiff filed her internal EEO complaint and more than eight months after she filed her first EEOC charge. Also, aside from the protected complaints themselves, Plaintiff's only evidence that Mr. Carr

harassed her during the period between her first protected activity and her termination concerns the single incident in which Mr. Carr allegedly poked Plaintiff in the shoulder.  In fact, the record reflects that Plaintiff had only minimal interaction with Mr. Carr after that incident.  (<u>See</u> Allen Dep. (Doc. 39-1) 215-16.)  Thus, Plaintiff's evidence does not show that Mr. Carr's alleged harassment, like the intervening events that established prima facie causation in <u>Lettieri</u>, "occurred regularly."  <u>See</u> 478 F.3d at 651.

Plaintiff also argues that FedEx has given inconsistent reasons for her termination and that this should be considered in determining whether Plaintiff has satisfied the causation element of a prima facie case of retaliation, citing <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 280-81 (3d Cir. 2000).  Contrary to Plaintiff's assertions, however, there is no evidence that FedEx has ever given any reasons for firing Plaintiff other than those stated in the termination letter of April 3, 2007.  Possible differences among various employees' accounts of the March 23, 2007 incident that led to Plaintiff's firing and of the previous confrontations between Plaintiff and her coworkers do not qualify as evidence that FedEx has given inconsistent reasons for firing Plaintiff.  According to the evidence before the court, FedEx has consistently stated that it terminated Plaintiff's employment based on its determination that Plaintiff violated FedEx's

acceptable workplace conduct policy, and that, in deciding to fire Plaintiff, FedEx considered Plaintiff's interview with the investigator, her tenure with FedEx, her awareness of company policy on workplace threats, and her history of confrontations with other employees. (See Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. 9 (Doc. 45-9).)

Based on the foregoing, this court concludes that Plaintiff has failed to present evidence from which a reasonable factfinder could conclude that a causal connection exists between Plaintiff's protected activity and the termination of her employment with FedEx. This court therefore concludes that Plaintiff has not established a prima facie case of Title VII retaliation with respect to her firing and will grant Defendant's motion for summary judgment as to this issue.

Even assuming, arguendo, that Plaintiff has made out a prima facie case of retaliation with respect to her termination, summary judgment for Defendant would still be appropriate under the McDonnell Douglas burden-shifting framework. Once the plaintiff has successfully established a prima facie case, the burden is on the defendant to articulate a legitimate, nonretaliatory reason for its adverse employment action. Holland, 487 F.3d at 218 (citation omitted). FedEx has satisfied this burden by consistently stating that it terminated Plaintiff's employment because she was determined to have

violated FedEx's acceptable workplace conduct policy, and that, in deciding to fire Plaintiff, FedEx considered such factors as Plaintiff's history of confrontations with other employees.  See Thacker v. Brady Servs., Inc., 367 F. Supp. 2d 882, 890 (M.D.N.C.), aff'd per curiam, 144 F. App'x 328 (4th Cir. 2005). Thus, Plaintiff bears the burden of producing evidence from which a reasonable factfinder could conclude that FedEx's proffered reasons for her termination are pretexts for retaliation.  See Anderson, 477 U.S. at 248; Ross, 759 F.2d at 365 (citation omitted).

Plaintiff attempts to carry this burden by asserting that she did not make any threats and that Defendant's conclusion to the contrary was incorrect.  (Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. (Doc. 45) 9 ("It is a simple case of she said-she said, and Defendant chose to believe Jones.").)  However, "'when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.'"  DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998) (quoting Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410-11 (7th Cir. 1997)); see also id. ("[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by

firms charged with employment discrimination." (internal quotation marks and citations omitted)). Plaintiff has failed to produce evidence from which a reasonable factfinder could conclude that FedEx's stated basis for her discharge was not, in fact, the reason she was fired. Further, "to establish that an employer's 'proffered reason for the challenged action is pretext for discrimination, the plaintiff must prove both that the reason was false, and that discrimination was the real reason for the challenged conduct.'" Id. at 298 (internal quotation marks and citation omitted) (quoting Jiminez v. Mary Washington Coll., 57 F.3d 369, 377-78 (4th Cir. 1995)). Plaintiff has failed to produce evidence from which a reasonable factfinder could conclude that Defendant's real reason for terminating her employment was to retaliate against her for engaging in protected activity.

Plaintiff does argue that the court can infer pretext from employment actions by Defendant that Plaintiff asserts are inconsistent. Plaintiff points out that, whereas she was fired when FedEx determined she had made workplace threats, Mr. Carr was not fired when FedEx determined he had poked Plaintiff in the shoulder.[7] Because Plaintiff attempts to prove discrimination by

_____

[7] Notably, FedEx's investigation into the poking incident, its determination that Mr. Carr did indeed poke Plaintiff in the shoulder, and its punishment of Mr. Carr in the form of "documented counseling," (Zollicoffer Dep. (Doc. 40-5) 84-85), indicate that FedEx did not presume that Plaintiff's workplace

comparing her experiences to those of a coworker, Plaintiff must show that she and her comparator are "similar in all relevant respects." Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (per curiam) (citations omitted), cert. denied, No. 10-774, 2011 WL 588995 (U.S. Feb. 22, 2011). "Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Id. (alterations in original) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)).

Although the record indicates that Plaintiff and Mr. Carr were peers at FedEx, (Allen Dep. (Doc. 39-1) 124-25), and that both were under Mr. Zollicoffer's supervision, (Zollicoffer Dep. (Doc. 40-5) 19-21), Plaintiff's comparison between herself and Mr. Carr is misplaced because the workplace violence complaints that were filed against Plaintiff and Mr. Carr, respectively, did not allege the same conduct. Plaintiff's June 6, 2006 complaint against Mr. Carr asserted that he poked Plaintiff in the

violence report was less credible than Ms. Jones' March 26, 2007 report. In other words, FedEx was consistent in taking workplace violence reports seriously, regardless of whether the employee submitting the report had recently engaged in protected activity. This fact weighs against a conclusion that Plaintiff was a target of retaliatory animus.

shoulder, but did not allege that Mr. Carr explicitly communicated any threat of further or future violence. Conversely, Ms. Jones' March 26, 2007 workplace violence report alleged that Plaintiff held her fingers in the shape of a gun, stated, "I am going to get my permit this weekend," and warned Ms. Jones to wear a padded vest to work. Ms. Jones' accusation that Plaintiff explicitly threatened to commit workplace violence is a distinguishing circumstance that adequately explains the differential treatment by FedEx, including the termination of Plaintiff's employment when FedEx concluded that Plaintiff's actions violated its workplace conduct policy. See Moore v. City of Charlotte, 754 F.2d 1100, 1107 (4th Cir. 1985) ("'[C]omparison can be made in light of the harm caused or threatened to the victim or society, and the culpability of the offender.'" (quoting Solem v. Helm, 463 U.S. 277, 292 (1983))).

This court concludes that Plaintiff has failed to establish a prima facie case of retaliation. Furthermore, even if Plaintiff had succeeded in making out a prima facie case, this court concludes that Plaintiff has failed to present evidence from which a reasonable factfinder could conclude that Defendant's proffered reasons for firing Plaintiff are only pretexts for retaliation. The court will therefore grant Defendant's motion for summary judgment with respect to Plaintiff's claim of retaliatory discharge.

## IV.   CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 37) be **GRANTED**.   A judgment in accordance with this opinion and order will be filed contemporaneously herewith.

This the 31st day of March 2011.

_____
United States District Judge